JUAN MANUEL PORTELA, Petitioner, *v.* TRIBUNAL OF THE JUDICIAL DISTRICT OF SAN JUAN, Respondent.

No. 420. Argued May 9, 1946.—Decided June 11, 1946.

*Celestino Iriarte, F. Fernández Cuyar,* and *H. González Blanes* for petitioner. *E. Campos del Toro, Attorney General,* and *Carlos Santana Becerra* for respondent Judge, who also appeared in person and was heard.

MR. JUSTICE CÓRDOVA delivered the opinion of the court.

On or about May 21, 1945, an action for damages brought by the petitioner against Eastern Sugar Associates was tried before the respondent judge, as Judge of the District Court of San Juan in charge of the First Section of that court, and the judge reserved his decision. On March 26, 1946, and while the case was pending decision, Act No. 212 to "abolish" the District Court of San Juan and "create" the Tribunal of the Judicial District of San Juan (Laws of 1946, p. 394), became effective. Pursuant to said Act, the respondent judge was appointed, on that same date, March 26, 1946, "Judge for the Section of Extraordinary Remedies and Special Proceedings of the Tribunal of the Judicial District of

San Juan." Subsequently, the petitioner asked the respondent judge to decide the action for damages which was pending, and the judge refused to do so, on the ground that he had no jurisdiction.

The petitioner prays for a writ of mandamus to order the respondent judge to decide the action for damages. The alternative writ was issued and the judge as well as the Attorney General of Puerto Rico in his representation, appeared and explained that, under the construction which the respondent judge and his colleagues of the District Tribunal of San Juan give to Act No. 212 of March 26, 1946, the respondent judge has jurisdiction or power to entertain only those actions assigned to the section to which he has been appointed, and therefore, has no power or jurisdiction over petitioner's case which has been assigned to another section, the "Civil Section."

 Let us first consider the provisions of Act No. 212. Section 1 announces that the District Court of San Juan is abolished, and § 2, creates the Tribunal of the Judicial District of San Juan. Sections 3 and 4 establish that the jurisdiction of the tribunal shall be precisely the same as that which the court had. Section 5 provides for the division of the tribunal in four sections, the Criminal Section,[1] the Family Relations Section,[2] the Extraordinary Remedies and Special Proceedings Section,[3] and the Civil Section,[4] and goes on to state the cases of which each shall take cognizance "pursuant to the jurisdiction" of the tribunal and "in the

[1] Criminal actions and writs of habeas corpus "arising from actions of a penal nature."

[2] Actions of divorce, nullity of marriage, support, filiation, incapacity, tutorship, emancipation, absence, adoption, patria potestas, waiver of impediment to marry, declaration of heirs, judicial authorizations, judicial administrations, probate proceedings, ad perpetuam memoriam, appointment of guardians ad litem, habeas corpus proceedings not appertaining to the criminal section, cases of juvenile delinquents.

[3] Injunctions, mandamus, certiorari, writs of prohibition, quo warranto, unlawful detainer proceedings, wage claims, claims of personal property, summary foreclosure proceedings.

[4] All other actions and matters not assigned to the other sections.

exercise of such jurisdiction." It adds that every section shall take cognizance of "auxiliary remedies" and "measures and incidental proceedings brought about, arising or moved for in the causes, remedies, proceedings, and matters" pertaining to that section. Section 6 provides for the appointment of two judges for the Criminal Section and one for each of the other sections, and states that all the judges "shall have the same faculties and powers appertaining to district judges under the laws in force." By § 7 it is provided that each one of the judges shall act as administrator in turns of one year, in the order established by the majority. Section 8 establishes that in case of disqualification of one of the judges, the other judges by majority vote shall determine which of them is to take cognizance of the case and that if there is a tie the Attorney General shall make the designation. Section 9 provides how and when the judges shall act *in bank*. Section 10 provides as follows:

"Section 10.—All actions, proceedings, remedies, causes, and civil and criminal matters of all kinds filed or pending on the date this Act takes effect in the District Court of the Judicial District of San Juan hereby abolished, shall continue to be heard in the Tribunal of the Judicial District of San Juan which, and the judges of the sections of which are hereby expressly vested with jurisdiction to take cognizance and continue to take cognizance of such actions, proceedings, causes, remedies, and matters, until the final resolution thereof, in accordance with the distribution hereinafter directed in this section. The judge of the Tribunal of the Judicial District of San Juan shall distribute among the different sections referred to in Section 5 of this Act, all the proceedings, causes, remedies, actions, and civil and criminal matters aforementioned in this section, assigning to said sections the said proceedings, causes, actions, remedies, and matters, according to the nature thereof."

The remaining provisions of the Act, which for the most part refer to the other officers and employees of the court, their powers, duties, and compensation, are not specially relevant.

We find that § 6 provides that every judge of the tribunal shall have the same faculties and duties as a district judge. But a district judge has the power to take cognizance of every case of which his court has jurisdiction. However, §§ 5 and 10 of the Act provide, in effect, that each one of the judges of the Tribunal of San Juan shall exercise only a fraction of the powers of a district judge, that is, that he shall entertain only certain types of cases, of the various types which are within the jurisdiction of the tribunal. The apparent inconsistency between § 6 on the one hand, and §§ 5 and 10 on the other, however, may be explained, and two alternative explanations occur to us. Possibly the Legislature meant to say that each judge of the Tribunal of San Juan would have the same powers of district judges in those cases pertaining to his section and not in other cases. Or possibly the Legislature desired to vest the judges of San Juan with all the powers of district judges, the provisions of §§ 5 and 10 relative to the distribution of the work of the tribunal in four sections being merely directory and not jurisdictional or restrictive of the judicial power.

In order the better to understand the lawmaker's intention, it is well to examine the form in which the District Court of San Juan was constituted up to March 26, 1946. It consisted of four judges,[5] and the work was distributed among the judges pursuant to regulations prepared by a judicial council composed of the judges and the Attorney General.[6] The regulations[7] provided for the division of the court in four sections: the Criminal Section, Civil Section No. 1 (contested civil actions); Civil Section No. 2 (*ex parte* matters, default

---

[5] Act No. 105 of September 16, 1925 (Laws of 1925, p. 966) and Act No. 132 of May 14, 1937 (Laws of 1937, p. 289).

[6] Section 4, Act No. 105, *supra*.

[7] Regulations for the District Court of the Judicial District of San Juan, as revised and promulgated on December 18, 1940.

cases, and motions); and Civil Section No. 3 (special and extraordinary proceedings), each one of the judges sitting in one of the sections for five months and then passing to another under a rotation system. Construing regulations regarding the distribution of the work in another district court (Humacao), we held in Pastrana v. Pastrana, 57 P.R.R. 212, that the regulations were merely directory and did not affect the power or jurisdiction of a judge to intervene in a case which fell to another judge under the regulations.

That was the existing situation when the Legislature acted in March 26, 1946. It clearly and definitely eliminated the rotation system which prevailed in the District Court of San Juan and provided that each judge should act permanently in that section of the tribunal assigned to him. It substantially adopted the system prevailing in the District Court regarding the distribution of the work in four sections, although it made certain changes in the distribution of the work. It did not expressly provide that the appointed judge for one section was to lack jurisdiction or power to intervene in matters pertaining to another section. And it did expressly provide that if a judge of one section should be disqualified in any case another judge should be designated to substitute him.

We can not say, therefore, that Act No. 212 clearly shows the legislative intention to alter fundamentally that principle of the prevailing system which determines that the provisions regarding the distribution of work among the judges of a court are directory and do not affect the power or jurisdiction of the judge to act in any case of which the court has jurisdiction. Not only does the legislative intention to limit the powers and jurisdiction of the judges of the Tribunal of San Juan fail to show itself, but the effect of such a limitation would be so prejudicial to the administration of justice, and so far in conflict with the liberal policies of the procedural

system which have merited the approval of our Legislature,[8] that we could not assume that such an intention was entertained by the Legislature in the absence of a clear and definite expression of such intention. Let us consider for a moment the effect of Act No. 212, if it should be deemed to provide that the judge of one of the sections of the Tribunal of San Juan lacks jurisdiction to entertain matters pertaining to the other sections. We would have then four district courts in San Juan, each one with limited jurisdiction. Judgments rendered by a judge of a section would be void if it were later held that under the pleadings and the evidence the case really pertained to another section. In many cases it would be very difficult to determine which of the sections had jurisdiction. For example, the "auxiliary remedies" and "incidental proceedings brought out arising or moved for" within an action, pertain under § 5 of Act No. 212, to the section which entertains the main action. But it is very difficult at times to determine whether a "remedy" or "proceeding" is incidental to another action or whether it is an independent action, and that question, which under the modern procedural system is usually unimportant, would become a jurisdictional question in the District Tribunal of San Juan. If a petition for injunction or mandamus is filed in San Juan, the case falls to the Extraordinary Remedies Section. But if after the case is heard it should appear that the remedy sought does not lie, and that the proper result is to enter a declaratory judgment, as may and should be done, under the Rules of Civil Procedure ratified by the Legislature,[9] the judge of that section would lack jurisdiction to entertain the case and the action would have to be commenced again before the judge of the Civil Section. A person who believed himself illegally deprived of his liberty

[8] Act No. 9 of April 5, 1941, authorizing the Supreme Court to promulgate rules of procedure "*for the purpose of simplifying*" them and promoting the prompt administration of justice." And see the Rules of Civil Procedure approved under the Act cited.

[9] *Núñez* v. *Benítez, Chancellor*, 65 P.R.R. 812, and see Rules Nos. 54 and 81 of Civil Procedure.

in San Juan, and who did not know the reason for his detention would not know whether to resort to the Criminal Section or to the Family Relations Section, since the jurisdiction could not be determined until his custodian should explain whether the detention arose from "action of a penal nature" (Criminal Section) or otherwise (Family Relations Section). A person entitled to damages and to an injunction to prevent subsequent damages who should be compelled to litigate in San Juan, would be inevitably subject to jurisdictional defenses. If he decided that the main action was that for damages, and resorted to the Civil Section, the other party could insist that the main action was that for an injunction over which only the Extraordinary Remedy Section would have jurisdiction. If he decided the contrary, and resorted to the Extraordinary Remedy Section, the opposite defenes could be set up: that the main action was that for damages and not that for injunction. And if he could not make up his mind as to which was the main action, and chose to file two separate complaints, he would be always subject to the defense that one of the two complaints was "incidental" to the other, and that therefore both belonged to the same section.

The foregoing reasoning inevitably leads us to the conclusion that Act No. 212 should be construed in the sense of creating one District Tribunal of San Juan and not four, and that under said Act the judges of the Tribunal have power and jurisdiction to entertain any matter which falls within the jurisdiction of the Tribunal, although it is their duty, as laid down by the Legislature, to distribute the work of the court, both that which was pending on March 26, 1946, as well as that arising thereafter, in accordance with the system established by said Act, and following that system as faithfully as possible without violating procedural rules and principles which the Legislature has approved or ratified for the more speedy and simple administration of justice.

The respondent judge, therefore, has power and jurisdiction to decide the action for damages brought by petitioner.

Although ordinarily it is his duty not to intervene in cases pertaining to other sections of the court, since this case was tried before him and is pending his decision, it is proper that he exercise the power and jurisdiction vested in him by his office.

The peremptory writ of mandamus should be issued.